# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 14, 2011

Lyle W. Cayce
Clerk

No. 09-60743

In the Matter of:  NORTHLAKE DEVELOPMENT L.L.C.,

Debtor

--------------------------------------------------

KINWOOD CAPITAL GROUP, L.L.C.; GEORGE KINIYALOCTS,
Individually and as General Partner of Kiniyalocts Family PTRS. I, LTD.,

Appellees

v.

BANKPLUS,

Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:

BankPlus appeals the district court's affirmance of the bankruptcy court's decision that certain deeds that BankPlus held were legal nullities. The panel certified a question to the Mississippi Supreme Court, and that court accepted the question. We AFFIRM.

No. 09-60743

Kinwood Capital Group, L.L.C. ("Kinwood") is a member-managed Mississippi limited liability company formed for the purpose of purchasing and developing an approximately 520-acre tract of land in Mississippi ("Property"). As relevant here, George Kiniyalocts owned 75 percent of Kinwood through a family limited partnership he that controlled,[1] and Michael Earwood, his attorney and business partner, owned 25 percent. Under Kinwood's Operating Agreement, Kiniyalocts held veto power over any major asset sale.

Earwood subsequently formed Northlake Development, L.L.C. ("Northlake"), with himself as sole owner and managing member. Kiniyalocts had no knowledge of Northlake. On July 12, 2000, Earwood signed, purportedly on behalf of Kinwood, a warranty deed conveying the Property from Kinwood to Northlake (the "Kinwood Deed"). He signed the document as Kinwood's "Managing Member." The Kinwood Deed was recorded on August 7, 2000. Before recording the deed, Earwood approached BankPlus about borrowing money for Northlake with the Property as collateral.  BankPlus agreed to lend Northlake approximately $300,000. In return, Earwood, on behalf of Northlake, executed a deed of trust to the Property in favor of BankPlus (the "BankPlus Deed"). The BankPlus Deed pledged Northlake's interest in the Property as collateral for the loan.[2] BankPlus obtained a title certificate to the Property from Earwood's two-person law firm, signed by Earwood's law partner, on August 10,

---

[1] Kiniyalocts and Kiniyalocts Family Partners I, LTD are referred to collectively as "Kiniyalocts."

[2] BankPlus later lent more money to Northlake with the Property as collateral. Earwood executed a new Deed of Trust on behalf of Northlake each time.  The deeds of trust are referred to collectively as the "BankPlus Deed."

No. 09-60743

2000. Earwood put most and perhaps all of the BankPlus loan proceeds to his personal use.

These facts came to light after Northlake filed for Chapter 11 bankruptcy protection in August 2005. Earwood signed the petition for Northlake and listed the Property as a Northlake asset. After a dismissal and a second bankruptcy filing, the case was converted to a Chapter 7 bankruptcy and a trustee was appointed. The bankruptcy court found that Earwood had no authority to convey the Property from Kinwood to Northlake and that, as a result, the Kinwood Deed could not pass title of any kind. The bankruptcy court entered judgment for Kinwood, declared the Kinwood Deed and the BankPlus Deed null and void, and required both to be cancelled in the land records of Panola County. BankPlus appealed to the district court, and the district court affirmed.

Because the case presents an important and determinative question of Mississippi limited liability company and property law for which there is no controlling Mississippi Supreme Court precedent, we certified the following determinative question to the Supreme Court of Mississippi:

> When a minority member of a Mississippi limited liability company prepares and executes, on behalf of the LLC, a deed to substantially all of the LLC's real estate, in favor of another LLC of which the same individual is the sole owner, without authority to do so under the first LLC's operating agreement, is the transfer of real property pursuant to the deed: (i) voidable, such that it is subject to the intervening rights of a subsequent bonafide purchaser for value and without notice, or (ii) void *ab initio*, *i.e.*, a legal nullity?

*In re Northlake Dev., L.L.C.*, 614 F.3d 140, 145 (5th Cir. 2010). We "disclaim[ed] any intention or desire that the Supreme Court of Mississippi confine its reply

3

No. 09-60743

to the precise form or scope of the question certified. *Id*. The Mississippi Supreme Court accepted the certified question; its answer resolves the case.

The Mississippi Supreme Court explained that the deed was neither voidable nor void *ab initio*, but "void and of no legal effect" because Earwood, as an agent of Kinwood, lacked actual or apparent authority to convey Kinwood's Property and Kinwood never ratified the purported transfer. *Northlake Dev. L.L.C. v. BankPlus*, --- So.3d ---, 2011 WL 1743943, at *1 (Miss. 2011). Under Mississippi law, an agency relationship exists between a member-managed limited liability company such as Kinwood and its members. *Id*. at *2 (citing Miss. Code Ann. § 79-29-303(1) (Rev. 2009)). As a member of Kinwood, Earwood was Kinwood's agent. *Id*.

"Generally, an agent cannot bind the principal to a contract unless the principal clothes the agent with authority, whether actual or apparent." *Id*. (citations omitted). Under Kinwood's Operating Agreement, Earwood lacked actual authority to transfer the Property. Earwood knew that he did not have actual authority to convey the Property, and as Earwood is the sole owner of Northlake, his knowledge is imputed to Northlake. *Id*. "Because the doctrine of apparent authority is unavailable to one who knows an agent lacks actual authority," and both Earwood and Northlake knew Earwood lacked actual authority, Earwood did not have apparent authority to transfer the Property to Northlake. *Id*. "[W]here no actual or apparent authority exists to transfer a principal's property, . . . . the deed is void unless and until later ratified." *Id*. at *3. Kinwood could have ratified the purported conveyance by "manifesting assent that [the conveyance] [would] affect [its] legal relations" or through "conduct that justifie[d] a reasonable assumption" that it had consented to the

4

No. 09-60743

transfer. *Id.* (quoting Restatement (Third) of Agency § 4.01(2) (2005)).[3] Kinwood never ratified Earwood's purported transfer. *Id.* "Kinwood's rights in the property are therefore unaffected by the actions of Earwood, Northlake, or any subsequent party." *Id.*

AFFIRMED.

---

[3] As the Mississippi Supreme Court noted, "It is true that, under some circumstances, a principal's inaction can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act. That is certainly not the case here." *Northlake Dev.*, 2011 WL 1743943, at *3 (citing Restatement (Third) of Agency § 4.01 cmt. f (2005)).